**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SARAH M. G.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-1510-JD** |
| | ) | |
| **FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Sarah M. G.[1] (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). United States District Judge Jodi W. Dishman referred the case to the undersigned Magistrate Judge for submission of findings and recommendations consistent with 28 U.S.C. § 636(b)(1)(B), (C), and Federal Rule of Civil Procedure 72(b). Doc. 7.[2]

---

[1] The Court refers to Plaintiff by first name and last initial only to protect Plaintiff's privacy because of the sensitive nature of medical and personal information disclosed in Social Security cases.

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing that the Administrative Law Judge (ALJ) failed to account for Plaintiff's proliferative diabetic retinopathy, failed to comply with SSR 19-2p in evaluating Plaintiff's obesity, and failed to make adequate findings about Plaintiff's past relevant work at step four. Doc. 6, at 2-15. After careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the undersigned recommends that the Court reverse the Commissioner's decision. *See* 42 U.S.C. § 405(g). The undersigned finds that the ALJ's failure to consider Plaintiff's proliferative diabetic retinopathy at step four requires remand, *see* Doc. 6, at 3-10, and does not address Plaintiff's additional arguments.

**I. Administrative determination.**

**A. Disability standard.**

On January 3, 2023, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning November 1, 2021. AR 280; *see* 42 U.S.C. §§ 401-434.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

**B. Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform" a different type of work and that such a "specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

**C. Relevant findings.**

**1. ALJ's findings.**

The ALJ applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 27-39; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step framework). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since November 1, 2021, the alleged onset date;

(2) had the severe medically determinable impairments of diabetes mellitus with neuropathy; diabetic retinopathy; degenerative disc disease; right shoulder disorder; hypertension; obstructive sleep apnea; and obesity;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain restrictions: she can occasionally climb ramps and stairs, balance, stoop, crouch, and crawl; cannot climb ladders, ropes or scaffolds; can frequently reach in all directions with her right upper extremity; can frequently reach with her left upper extremity; and should avoid all exposure to hazards such as unprotected heights and heavy machinery;[3]

(5) is capable of performing past relevant work as a general clerk; and

(6) had not been under a disability since November 1, 2021.

AR 29-39.

**2. Appeals Council's findings.**

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 5-7, "making the ALJ's decision the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011); *see* 20 C.F.R. § 404.981.

---

[3] "[R]esidual functional capacity is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance"). "[T]he threshold . . . is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards, may under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotations omitted). This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

**B. The administrative record.**

Plaintiff argues that "[t]he ALJ's hypothetical question and RFC are fatally flawed and are not supported by substantial evidence as required." Doc. 6, at 2. Plaintiff has proliferative diabetic retinopathy, including macular edema, and has suffered vitreous and intraretinal hemorrhages. AR 534-64, 713-92, 933-92, 1018-44, 1088-1100. In December 2021, October 2023, January 2024, and June 2024, Plaintiff received intravitreal injections. AR 724, 1021, 1094-95.

The ALJ convened an initial hearing on Plaintiff's disability application on May 2, 2024. *Id.* at 95. Upon hearing an opening statement by Plaintiff's attorney and Plaintiff's testimony concerning her vision, the ALJ then continued the hearing to obtain an ophthalmology medical expert. *Id.* at 105.

At the second hearing, on September 23, 2024, the ALJ heard the testimony of impartial medical expert William Nevins, MD, a board-certified ophthalmologist. AR 75-89. Dr. Nevins reviewed Plaintiff's history of vision issues and testified that Plaintiff

> probably drives carefully. She does not do well at night, because a little bit of her retinas have been destroyed by panretinal coagulation, which makes her function poorly at night. She has decreased stereopsis. She has some depth, but probably has decreased stereopsis by the decrease in her visual acuity. Her color vision may be variable because she's had macular edema in the past, and this might affect her in -- if she was, like, oh, working at a furniture store, she had colors of couches and stuff like this, or a rush job. Glare may well bother her because she's had cataract surgery, and she has posterior capsular opacifications beginning and that can scatter light a little bit. She suffers from dry eyes. She's had punctal plugs. This would be a problem in windy and dusty conditions, and perhaps on the computer for extended times because we blink less frequently when we're looking at the computer.

*Id.* at 78. Dr. Nevins concluded that Plaintiff could look at a computer monitor all day but would require frequent short breaks and "might be slow on task[]" as a result. *Id.* at 85-87. Dr. Nevins noted that with Plaintiff's history of

vitreous hemorrhages and macular edema, Plaintiff may have to "work with one eye . . . . [w]hich would probably slow her down even more." *Id*. at 87-88.

The ALJ then continued the hearing a second time to "hav[e] another hearing with . . . [an] internal medicine ME and have that doctor cover all the impairments[.]" AR 89. The third hearing convened on October 21, 2024, and the ALJ heard the testimony of impartial medical expert Subramaniam Krishnamurthi, MD, who is board certified in internal medicine and cardiology. *Id*. at 48, 51-56. Dr. Krishnamurthi listed Plaintiff's diabetic retinopathy as a severe impairment but did not impose any visual limitations, and testified that Plaintiff could "look[] at a computer screen throughout an eight-hour workday[]" without limitations. *Id*. at 54-56.

Plaintiff also testified. AR 57-64. When asked about looking at a computer screen she indicated:

> It's variable. For example, I can look for a little while and then my eyes start getting blurry, and then I can try it again. But one thing that happens also – because I can adjust things for size. But the contrast on most computer programs that are custom to the job, you don't have a lot of control over. And if, for example, their color scheme is gray, like a light gray background, for example, with black writing, I have a great deal of difficulty making that out, or color letters. I – and now I've gotten to where I can't even read script in cursive because I just can't make out the shapes as well. And my reading has deteriorated greatly, because I will be looking – I have to really look at it. And sometimes the letters will – some of them will disappear until I study it for a while, and then they'll kind of reappear. And that's partly how my eye tests have been so good is because whenever they do the test, my eye doctor, they just

> let you take as long as you need to and there's no rush. And if I study it long enough, then I can make out the letters without them you know, get them all to appear eventually. But I'll misread words and have to reread and reread. And that slows me down in a way that I feel like really impairs my ability to be accurate. I can't proofread like I used to be able to. And that was part of my value as an employee is being accurate. And I can't tell that I'm accurate anymore.
>
> ****
>
> I've gotten to where my most frequent implement to use to write is a Sharpie. And then I even have to be careful in reading it back because I get to where I can't read my own handwriting. But I've tried to use some of those Sharpie fine point ink pens, and they are bold for an ink pen, but I – but, you know, I can't really read that either. And another thing I have found is, like, when I try to do filing of my paperwork at home, I can't see the level – I can't see the file tabs anymore to figure out where I need to put stuff.

*Id*. at 61-63. Plaintiff also testified that her ability to drive is extremely limited.

*Id*. at 59-60.

The ALJ then posed a hypothetical to a vocational expert:

> My first hypothetical, please assume an individual born in 1962, high school education, who could perform light work, as defined in the regulations. Individual can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. Individual cannot climb ladders, ropes, or scaffolds. Individual can frequently reach in all directions with her right upper extremity. Individual can frequently reach with the left upper extremity. There are no overhead restrictions regarding the left upper extremity. Individual is to avoid all exposure to hazards such as unprotected heights and heavy machinery. Based on the hypothetical, would the Claimant's past relevant work as a General Clerk be available?
>
> A Yes, Your Honor.
>
> Q If I add to any hypothetical that the individual can sit, stand, and walk for a combined total of less than eight hours during an

> eight-hour workday, or the individual would be required to take frequent unscheduled breaks in excess to normally allotted breaks, or an individual missed two or more days of work per month due to her impairments, or the individual would be off-task or off-pace up to 20% of an eight-hour workday, how do those factors individually affect all jobs?
>
> A Any one of those factors, Your Honor, would eliminate all competitive employment.

AR 65-66.

"State agency medical consultants Dr. Painton, in May 2023, and Dr. Blalock, in September 2023, reviewed [Plaintiff]'s medical record." AR 36. Both doctors specialize in internal medicine. AR 110, 118. Both consultants did not recommend any visual limitations, noting that Plaintiff's "Exam reveals [visual acuity] 20/40 bilat." *Id*. at 111, 117. A consultative examiner who is also an internist concluded that Plaintiff had 20/40 vision with glasses and a "[b]est corrected vision" of 20/50. *Id*. at 843, 845.

The ALJ reviewed all the evidence in the record "based on the requirements of 20 CFR 404.1529 and SSR 16-3p." AR 33. Relevant to Plaintiff's retinopathy, the ALJ noted that Plaintiff

> reported blurred vision, distortion and glare. At times, she had vitreous hemorrhage[s]. In December 2021, October 2023[,] and January 2024, the claimant had intravitreal injection. In June 2024, she had only hand motion in her left eye. The claimant had intravitreal injection.
>
> However, other evidence is inconsistent with the claimant's allegations of disabling symptoms . . . . [I]n October 2023, the

> claimant's vision was 20/40 in her right eye and 20/50+2 in the left eye. In January 2024, her vision was 20/40 in her right eye and 20/40+2 in her left eye. In July 2024, the claimant's vision was 20/30 in her right eye and 20/50-2 in the left eye. During the consultative examination, the claimant had . . . . had 20/40 vision, with glasses, in her right and left eye. The claimant's best corrected vision was 20/50.

*Id*. at 35 (citations omitted).

**C. The ALJ failed to comply with SSR 96-8p.**

An ALJ considers prior administrative medical findings using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors. Id. § 404.1520c(a).

> "Supportability" examines how closely a medical opinion tracks the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions ... will be." "Consistency," on the other hand, compares a medical opinion to the other evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."

*Zhu v. Comm'r*, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2)).

The ALJ must articulate how persuasive he finds a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(b). In doing so, the

ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2).

The ALJ found "Dr. Painton's and Dr. Blalock's findings partially persuasive as they are supported by a detailed analysis however the entirety of the record is consistent with greater nonexertional limitations." AR 36. The ALJ rejected the opinion of Dr. Nevins on the grounds that he "was unable to provide any specific functional limitations, as is consistent with the record." AR 37. Finally, the ALJ found Dr. Krishnamurthi's opinion persuasive based in part on Plaintiff's visual acuity examinations. *Id.* Accordingly, the ALJ concluded that Plaintiff "is able to perform within the above residual functional capacity[,]" and "is capable of performing past relevant work as a general clerk . . . . as generally and actually performed." *Id.* at 38-39.

A general clerk must be able to

> Write[], type[], or enter[] information into computer, using keyboard, to prepare correspondence, bills, statements, receipts, checks, or other documents, copying information from one record to another. Proofread[] records or forms . . . . Sort[] and file[] records . . . . Address[] envelopes or packages by hand or with typewriter or addressograph machine.

Clerk, General, DICOT 209.562-010, 1991 WL 671792 (Jan. 1, 2016). As another court has observed, this work requires "frequent[] . . . near visual

acuity."[4] *Jenkins v. Saul*, 2020 WL 7771142, at *9 (N.D. Ill. Dec. 29, 2020); *cf. Moore v. Berryhill*, 2017 WL 3381341, at *3 (W.D.N.C. Aug. 4, 2017) ("The ALJ's decision to include a limitation on Plaintiff's ability to see to the left or to the right—peripherally—was consistent with the DOT, and therefore consistent with the VE's testimony that Plaintiff could still perform his past relevant work[]" as a general clerk).

"[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). The record evidence on which an ALJ must rely includes a claimant's medical history, medical signs, laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and effects of symptoms. SSR 96-8p, 1996 WL 374184, at *5. When the ALJ fails to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the Court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.

---

[4] Dr. Nevins testified that "[m]ost formal visual acuities do not have near vision. Retina people don't usually do near vision." AR 78.

The RFC assessment must convey "what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2. It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. § 404.1545(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 WL 374184, at *1, 7.

Here, the ALJ erred in formulating the RFC where it is not apparent from the ALJ's decision that the postural and environmental limitations the ALJ imposed "adequately considered and accounted for Plaintiff's severe impairment of diabetic retinopathy . . . and macular edema." *Clayton G. P. v.*

*Kijakazi*, 2022 WL 1192779, at *4 (N.D. Okla. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 945306 (N.D. Okla. Mar. 29, 2022); *see Berghauser v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4678562, at *3 (E.D. Okla. Sept. 3, 2019) ("Here, the ALJ has connected no evidence in the record to instruct this Court as to how the stated RFC accounts [for] the claimant's severe and nonsevere impairments, including the documented vision problems."), *report and recommendation adopted*, 2019 WL 4674309 (E.D. Okla. Sept. 24, 2019); *Gutierrez v. Astrue*, 2010 WL 11626781, at *16 (D.N.M. Jan. 6, 2010) (remanding where "it is clear that objective medical evidence supports Gutierrez's allegations of some visual impairment(s) [but] . . . . the ALJ provided no information of visual impairments to the VE"). "To the extent the ALJ based his opinion on findings by SSA review doctors at the reconsideration stage, it bears mention that those findings also defy logic: the SSA review doctors stated that Plaintiff's retinal disorders (including diabetic retinopathy) were severe, yet determined without explanation that she lacked any visual limitations." *Jenkins*, 2020 WL 7771142, at *10 (also noting conflicts of opinion between a doctor "who is not a retina specialist" and a doctor "who is[]"). Dr. Nevins – a board-certified ophthalmologist – did (inartfully) offer visual limitations, including the need to take frequent breaks when looking at

a computer, which would cause Plaintiff to "be slow on task[]" as a result.[5] AR 78, 85-87; *cf. Marilyn C. v. Kijakazi*, 2023 WL 4545190, at *8 (N.D. Ill. July 14, 2023) ("It's unclear why a doctor performing consultative exams for the Social Security Administration would fail to use the *lingua franca* of disability cases."). Notably, the vocational expert testified that an "individual [who] would be required to take frequent unscheduled breaks in excess [of] normally allotted breaks, or . . . missed two or more days of work per month due to her impairments, or . . . would be off-task or off-pace up to 20% of an eight-hour workday" would be unemployable. AR 66.

The ALJ justified his findings by observing that Plaintiff "testified she is able to drive a car[]" without acknowledging Plaintiff's testimony that her driving is extremely limited. *Compare* AR 37 *with id.* 59-60, 91; *cf. Neal v. Kijakazi*, 2023 WL 6035684, at *6 (E.D.N.C. June 2, 2023) ("Because of her

---

[5] Here, the ALJ rejected the opinion of the sole ophthalmologist who focused on Plaintiff's vision issues in favor of three internists who focused on Plaintiff's physical limitations. *Cf. Clayton G. P.*, 2022 WL 945306, at *4 ("The Court finds that the ALJ improperly cherry-picked among medical reports, using portions of evidence favorable to his position while ignoring other evidence." (internal quotations omitted, quoting and citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)); *Montoya v. Astrue*, 2009 WL 724057, at *8 (D. Colo. Mar. 19, 2009) ("the ALJ selectively picked what evidence in the report supported her findings while improperly discounting [other] findings").

vision, Neal could only see large print and had limited driving ability."). The ALJ noted that Plaintiff "does not use her [CPAP] machine" for her sleep apnea without acknowledging Plaintiff's statement that she does not use the CPAP machine because she cannot see the settings on the screen. *Compare* AR 34 *with id. at* 469, 841.

The ALJ noted that Plaintiff is able to manage her finances without acknowledging information in the record indicating that Plaintiff has difficulty reading her bills, using a checkbook, and managing her personal filing because of her vision. *Compare* AR 36 *with id. at* 63, 449, 457 ("[n]eighbors/family help with mail by reviewing and reading [out loud]"). The ALJ noted that Plaintiff "socializ[es] with others" without acknowledging Plaintiff's statement that she rarely uses written forms of communication, including email, texting, and mail. *Compare* AR 36 *with id. at* 449. Accordingly, the ALJ's RFC determination was flawed and remand is required. *See Jenkins*, 2020 WL 7771142, at *11 (the ALJ's "decision to discount Plaintiff's testimony about the severity of her blurry vision was patently inconsistent with the overall record").

Because the ALJ did not adequately explain how the RFC accounts for Plaintiff's severe diabetic retinopathy and related visual symptoms, and because those limitations may affect her ability to perform her past relevant work as a general clerk, remand is required. "On remand, the ALJ should . . .

include any additional limitations he finds appropriate in her RFC. The ALJ should then re-determine what work the claimant can perform, if any, and ultimately whether she is disabled." *Dewbre v. Astrue*, 2010 WL 3855644, at *3 (E.D. Okla. Sept. 30, 2010).

### D. Additional claims of error.

Because the above issue warrants remand, the Court need not address Plaintiff's other claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## III. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court reverse and remand the Commissioner's decision for further administrative proceedings.

The undersigned advises the parties of their right to file objections to this report and recommendation with the Clerk of this Court on or before September 29, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 15th day of September, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE